1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# DISTRICT COURT OF GUAM

UNITED STATES OF AMERICA,

        Plaintiff,

   vs.

RICHARD T. CABACCANG,

        Defendant.

Criminal Case No. 97-00095
Civil Case No. 08-00016

**OPINION AND ORDER RE: MOTION UNDER
28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR
CORRECT  SENTENCE AND ORDER RE:
CERTIFICATE OF APPEALABILITY**

    Before the court is Petitioner Richard T. Cabaccang's 28 U.S.C. § 2255 Motion to

Vacate, Set Aside, or Correct Sentence.[1]  *See* Docket No. 513.  He is proceeding *pro se* in this

---

  [1]  The Petitioner has requested an evidentiary hearing on his motion.  Under 28 U.S.C. §
2255, an evidentiary hearing shall be held "[u]nless the motion and the files and record of the case
conclusively show that the prisoner is entitled to no relief."  As stated in *United States v. Hearst*, 638
F.2d 1190 (9th Cir. 1980):

> The standard is essentially whether the movant has "stated a claim on which relief
> could be granted," *Moore v. United States*, 571 F.2d 179, 184 (3rd Cir. 1978) – or,
> where affidavits have been submitted, whether summary judgment for the
> government is proper. *See also* Fed.R.Civ.P. 12(b), 56. . . .

> The Ninth Circuit's rule is that "merely conclusionary statements in a §2255 motion
> are not enough to require a hearing."  *Wagner v. United States*, 418 F.2d 618, 621
> (9th Cir. 1969).

*Hearst*, 638 F.2d at 1194.  The Ninth Circuit described the standard as follows: "Where a prisoner's

1  case. *See* Docket No. 513. After reviewing the parties' submissions, as well as relevant caselaw

2  and authority, the court **HEREBY DENIES** the motion and enters a final order adverse to the

3  Petitioner, and **DENIES** a certificate of appealability pursuant to Rule 11 of the Rules Governing

4  Section 2255 Proceedings for the United States District Courts.

5  **I. PROCEDURAL AND FACTUAL BACKGROUND**

6       The Petitioner Richard Toves Cabaccang ("the Petitioner"), with his brothers Roy Toves

7  Cabaccang ("Roy") and James Toves Cabaccang ("James"), were indicted on May 9, 1997 in the

8  District Court of Guam on numerous charges relating to a drug trafficking ring that involved the

9  transport of methamphetamine from California to Guam in the early and mid-1990s.[2] After a

10  lengthy jury trial, the three brothers were convicted of all the charges against them. The

11  Petitioner was sentenced to life imprisonment for Counts II, III and V, and 240 months for Count

12  IV. Thereafter, the Petitioner and his brothers appealed their convictions. They raised numerous

13  grounds for reversal, including *inter alia*, the argument that the transport of drugs from

14  California to Guam did not constitute importation, insufficiency of evidence, ineffective

15  assistance of counsel, and erroneous jury instructions. A three-judge panel affirmed the

16  convictions in an unpublished decision. *See United States v. Cabaccang*, 16 Fed. Appx. 566,

17

18      motion presents no more than conclusory allegations, unsupported by facts and refuted by the

19  record, an evidentiary hearing is not required." *United States v. Quan*, 789 F.2d 711, 715 (9th Cir.
   1986) (citing *Farrow v. United States*, 580 F.2d 1339, 1360-61 (9th Cir. 1978) (en banc)).

20      Based on the analysis herein, the Petitioner's motion is "no more than conclusory allegations,
   unsupported by facts and refuted by the record." *Quan*, 789 F.2d at 715. Accordingly, his request

21  for an evidentiary hearing is denied.

22      [2]  In a twelve-count Amended Indictment, Roy was charged with Continuing Criminal

23  Enterprise (Count I), Conspiracy to Distribute Methamphetamine (Count II), Conspiracy to Import
   Methamphetamine (Count III), Conspiracy to Launder Money Instruments (Count IV), Importation

24  of Methamphetamine (Count V), Possession of Methamphetamine with Intent to Distribute (Count
   VI), Possession and Receipt of a Firearm by a Felon (Counts VII, VIII and IX), and Attempted

25  Importation of Methamphetamine (Counts X, XI, and XII). Richard was charged with Conspiracy
   to Distribute Methamphetamine (Count II), Conspiracy to Import Methamphetamine (Count III),

26  Conspiracy to Launder Money Instruments (Count IV), and Importation of Methamphetamine

27  (Count V). James was charged with Conspiracy to Distribute Methamphetamine (Count II),
   Conspiracy to Import Methamphetamine (Count III), and Conspiracy to Launder Money Instruments

28  (Count IV).

568, 2001 WL 760553 (9th Cir. 2001). The panel later issued a supplemental unpublished

opinion, addressing the Petitioner's and his brothers' challenges to their convictions based on

*Apprendi v. New Jersey*, 530 U.S. 466 (2000), and again affirming the convictions. *See United*

*States v. Cabaccang*, 36 Fed. Appx. 234, 2002 WL1192886 (9th Cir. 2002).

The Petitioner and his brothers then sought a rehearing, which was granted by the Ninth

Circuit in *United States v. Cabaccang*, 332 F.3d 622 (9th Cir. 2003) (*Cabaccang I*). In

*Cabaccang I*, the Ninth Circuit examined the argument of whether the transport of drugs on a

nonstop flight from one location in the United States (California) to another (Guam) constituted

importation within the meaning of 21 U.S.C. § 952(a), when the drugs had traveled through

international airspace en route to Guam. *Id.* at 624. The Ninth Circuit agreed with the

Petitioner's argument, stating that its "holding addresses those cases in which the undisputed

evidence shows that the nonstop flight on which the defendant transported drugs departed and

landed in the United States." *Id.* at 635. The Ninth Circuit reversed the importation related-

convictions, which as to the Petitioner, were Counts III (Conspiracy to Import Methamphetamine

) and Count V (Importation of Methamphetamine). *See id.* at 637. The court remanded the case

only as to Roy Cabaccang. *Id.* at 635. The Ninth Circuit further held: "As to the Cabaccangs'

challenges to their convictions and sentences on the counts that are not importation-related, we

adopt the panel decisions as our own and therefore affirm the judgment of the district court as to

those counts." *Id.* at 637.

The Petitioner and James then requested clarification as to their convictions and

sentences of Conspiracy to Distribute Methamphetamine (Count II), and Roy sought clarification

of the Ninth Circuit's remand as to his conviction and sentence of Possession of

Methamphetamine with Intent to Distribute (Count VI). In ruling on the request for clarification,

the Ninth Circuit denied remand of Count II as to the Petitioner and James, and granted remand

of Count VI as to Roy. *See United States v. Cabaccang*, 341 F.3d 905 (9th Cir. 2003)

(*Cabaccang II*).

On remand, the court concluded that it lacked jurisdiction to resentence the Petitioner or

James, stating:

1  Resentencing of James and Richard Cabaccang by this court would be
2  directly contrary to the mandate of the Ninth Circuit which stated that, quote:

3    Notwithstanding our reversal of their imporation related
     convictions, each of the Cabaccang brothers will still serve a life sentence
     for his involvement in the methamphetamine ring. Cabaccang, 332 F.3d,
4    specifically at page 636.

5  Transcript of Resentencing, May 6, 2005, pp. 7-8. The court then ordered the amendment of the

6  judgment of the Petitioner "to reflect only convictions on Counts Two and Four" and committed

7  the Petitioner "to continue to serve the sentence imposed by Judge Unpingco of life on Count

8  Two, and 240 months concurrent on Count Four." Transcript of Resentencing, May 6, 2005, pp.

9  15-16. The Petitioner again appealed, and the Ninth Circuit affirmed on March 30, 2007. *See*

10 *United States v. Cabaccang*, 226 Fed. Appx. 750, 2007 WL 1031376 (9th Cir. March 30, 2007).

11 The Petitioner sought certiorari from the United States Supreme Court on August 24, 2007.

12 *See* Docket No. 524, Exh. 7. The Court denied his petition on October 9, 2007. *See id.*

13 The Petitioner timely filed the instant § 2255 motion in this court on October 7, 2008.[3]

14 *See* Docket No. 513. The Government filed its response to the motion on February 3, 2009. *See*

15 Docket No. 524. Subsequently, the Petitioner filed his memoranda of law and authorities in

16 support of his motion on April 2, 2009.

17 **II. DISCUSSION**

18 In his § 2255 motion, the Petitioner challenges the representation by his trial counsel,

19 resentencing counsel, and appellate counsel. The court addresses the following claims of

20 ineffective assistance of counsel:

21

22 [3] The court notes that the Petitioner requested extensions of time to file his § 2255 motion, as the correctional facility was placed in "lockdown" from June 20, 2008 to September 7, 2008 due

23 to an "institution emergency." *See* Docket Nos. 509 and 510.

   An extension of time however, is not necessary and the court finds this motion to be moot.
24 Because the Petitioner sought certiorari review from the United States Supreme Court, the § 2255 petition had to be filed within one year of either "the conclusion of direct review by the highest

25 court, including the United States Supreme Court, to review the judgment" or "the expiration of the time to seek such review." *Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir. 2001); *see also*

26 *United States v. Garcia*, 210 F.3d 1058 (9th Cir. 2000). The United States Supreme Court denied the Petitioner's petition for certiorari on October 9, 2007. His § 2255 motion needed to be filed

27 within one year of this date. The record reveals that the Petitioner filed his motion on October 7,

28 2008; therefore, it is timely filed.

1.  Whether trial counsel's failure to challenge the amount of drugs established ineffective assistance of counsel

2.  Whether trial counsel's failure to object to the distribution charge was ineffective assistance of counsel

3.  Whether trial counsel's failure to request a change of venue amounts to ineffective assistance of counsel

4.  Whether trial and appellate counsels' failure to argue that the original sentence was unconstitutional proved to be ineffective assistance of counsel

5.  Whether resentencing counsel's failure to argue that the *Booker* decision should have applied to his case constituted ineffective assistance of counsel

6.  Whether trial counsel's failure to argue that he had been erroneously sentenced on the money laundering count was ineffective assistance of counsel

7.  Whether the District Court erred in not inquiring whether jurors were actually exposed to newspaper articles that were highly prejudicial to the Petitioner's right to an impartial trial

8.  Whether trial counsel's failure to explore the possibility of a plea agreement established ineffective assistance of counsel

9.  Whether trial counsel's acceptance of the Government's allegation of facts and failure to investigate alternative defenses amounts to ineffective assistance of counsel

10. Whether trial counsel's failure to request a mistrial after certain media reports constitutes ineffective assistance of counsel

11. Whether trial counsel's failure to request jury sequestration amounts to ineffective assistance of counsel[4]

*See* Docket No. 513.

In its response, the Government requests the court dismiss each of the grounds, and its precise arguments are set forth in the discussion below. *See* Docket No. 524.

**A. The law on ineffective assistance of counsel**

The Petitioner argues that the performance of his counsel during the trial, resentencing, and first and second appeal were so ineffective that, in essence, he was denied his constitutional right to counsel. The law regarding ineffective assistance of counsel is well settled. A two-prong test has been articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), which states

---

[4]   This ground is addressed only in the Petitioner's memo. He did not raise this issue in his initial motion.

1  that to establish a claim of ineffective assistance of counsel, a petitioner must show both

2  deficient performance by counsel (the "incompetence prong"), and that such deficient

3  performance prejudiced his defense (the "prejudice prong"). *Id.* at 687.

4        To demonstrate deficient performance by his counsel, or the incompetence prong, the

5  Petitioner must show his counsel's performance was "outside the wide range of professional

6  competent assistance." *Id.* at 690. "A convicted defendant making a claim of ineffective

7  assistance must identify the acts or omissions of counsel that are alleged not to have been the

8  result of reasonable professional judgment." *Id.* He must show that his counsel's performance

9  failed to meet an objective standard of reasonableness. *Id.* at 689.

10        Under the prejudice prong, the Petitioner "must show that there is a reasonable

11  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

12  been different." *Id.* at 694. That is, he must demonstrate "that counsel's errors were so serious as

13  to deprive [him] of a fair trial." *Id.* at 687. "An error by counsel, even if professionally

14  unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error

15  had no effect on the judgment." *Id.* at 691.

16        To succeed on a claim of ineffective assistance of counsel, a petitioner must satisfy both

17  prongs of the *Strickland* test. *See id.* at 700. However, the court's analysis of an ineffective

18  assistance of counsel claim does not require the mechanical application of the standards

19  articulated in *Strickland*. *Id.* at 696. The *Strickland* Court explained:

20          [T]here is no reason for a court deciding an ineffective assistance claim to
        approach the inquiry in the same order or even to address both components of the

21          inquiry if the defendant makes an insufficient showing on one. In particular, a
        court need not determine whether counsel's performance was deficient before

22          examining the prejudice suffered by the defendant as a result of the alleged
        deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground

23          of lack of sufficient prejudice, which we expect will often be so, that course
        should be followed. Courts should strive to ensure that ineffectiveness claims not

24          become so burdensome to defense counsel that the entire criminal justice system
        suffers as a result.

25  *Id.* at 697. Furthermore, in evaluating a claim of ineffective assistance of counsel, the court

26  "should recognize that counsel is strongly presumed to have rendered adequate assistance and

27  made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

28

1   As stated by the Ninth Circuit, "we 'indulge a strong presumption that counsel's conduct falls

2   within the wide range of reasonable professional assistance; that is, the defendant must overcome

3   the presumption that, under the circumstances, the challenged action might be considered sound

4   trial strategy.'" *Jones v. Ryan*, 583 F.3d 626, 636-37 (9th Cir. 2009) (quoting *Strickland*, 466

5   U.S. at 689 (citation and quotation marks omitted)). "A fair assessment of attorney performance

6   requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct

7   the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

8   perspective at the time." *Strickland*, 466 U.S. at 689.

9       Thus, the court examines the merits of each of the Petitioner's claims of ineffective

10  assistance of counsel to determine whether he has made a showing of deficient performance and

11  prejudice, and whether he has overcome the "strong presumption" that counsel has provided him

12  with "adequate assistance."

13      **1. Whether trial counsel's failure to challenge the amount of drugs**

14  **established ineffective assistance of counsel**[5]

15      The court first examines the Petitioner's allegations that his trial counsel was ineffective

16  in failing to challenge or object to the drug quantity alleged by the Government and the

17  Government witnesses. The Government contends that the Ninth Circuit addressed and disposed

18  of this issue in *Cabaccang*, 36 Fed. Appx. 234, where that court found that there was plain error,

19  but such error did not affect the outcome of the proceedings.

20      The *Strickland* Court has instructed that a court evaluating a claim of ineffective

21  assistance of counsel need not "address both components of the inquiry if the defendant makes

22  an insufficient showing on one." A court may examine the prejudice prong first, and "[i]f is

23  easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which

24  we expect will often be so, that course should be followed." 488 U.S. at 697. This course is

25  followed here.

26      In *Cabaccang*, 36 Fed. Appx. 234, the Ninth Circuit addressed the Petitioner's claim of

27  _____

28      [5] This issue is addressed in the Petitioner's motion, and is briefed in memo as Ground I.

error under *Apprendi* on the basis that the issue of drug quantity had not been submitted to the jury. *Id.* Because the Petitioner did not object at trial, the Ninth Circuit thus applied the plain error standard, which requires determining if there was error, if such error was plain, and if it seriously affected the fairness of the proceeding. *Id.* The court found that there was plain error, but concluded that "there is no real contest" that the Petitioner's "involvement was in far more than the minimum amount required to expose him to a life sentence under the relevant statutes." *Id.* at 235. In fact, the court noted that evidence as to the amount of drugs "was overwhelming to say the least." *Id.* at 235, n.3. Therefore, the court determined that the Petitioner did not suffer prejudice.

The Ninth Circuit's subsequent grant of rehearing in *Cabaccang I*, 332 F.3d 622, only reversed the Petitioner's importation-related convictions, and further stated: "As to the Cabaccangs' challenges to their convictions and sentences on the counts that are not importation-related, we adopt the panel decisions as our own and therefore affirm the judgment of the district court on those counts." *Id.* at 637. Thus, the Ninth Circuit's ruling in *Cabaccang I* which adopted the previous finding of no prejudice, defeats the Petitioner's claim of ineffective assistance of counsel.

**2. Whether trial counsel's failure to object to the distribution charge was ineffective assistance of counsel[6]**

Petitioner next argues trial counsel was ineffective when he did not object to the distribution charge because of a lack of evidence. The Petitioner contends that distribution was never proven and no witnesses testified that he was involved in the distribution of the alleged drugs. The Government contends that there was evidence in the record, including the testimony of several witnesses as to the Petitioner's role in the drug trafficking ring.

According to Government witness John Michael Kinder ("Kinder"), sometime during the summer of 1994, he saw the Petitioner packaging a pound of methamphetamine in a shoebox.

---

[6] This ground is addressed only in the Petitioner's motion. He did not discuss this issue in his subsequent memorandum.

1    Docket No. 411, Trial Transcripts, Volume X, p. 1825. The Petitioner told Kinder that "he was

2    packaging a pound to be mailed to Guam." Docket No. 411, Trial Transcripts, Volume X, p.

3    1825. Kinder also testified as to another incident, when he accompanied the Petitioner to a

4    house north of Long Beach, and the Petitioner came out with a white shopping bag containing a

5    pound of methamphetamine inside. *See* Docket No. 411, Trial Transcripts, Volume X, p. 1826-

6    27. The Petitioner "said it was going to be delivered to Guam." Docket No. 411, Trial

7    Transcripts, Volume X, p. 1826-27. The Petitioner also told Kinder that he paid $4,500 to

8    $5,000 for the pound, and it was selling on Guam for about $80,000. Docket No. 411, Trial

9    Transcripts, Volume X, p. 1827.

10       Kinder also testified as to his own participation in the drug trafficking ring. In January

11   1995, at the Residence Inn in Torrance, California, Roy Cabaccang had asked the Petitioner to

12   carry a pound of methamphetamine to Guam. Docket No. 411, Trial Transcripts, Volume X, p.

13   1841-42. Kinder agreed, and was to be paid $10,000. Kinder testified that Roy Cabaccang had

14   given him and two other men a pound of methamphetamine packaged in a ziplock freezer bag,

15   and Kinder described how he concealed the drugs on his body. Kinder testified that the

16   Petitioner "was in bedroom with us supervising" and "was checking us to make sure we looked

17   okay; it was more of a supervisory role." Docket No. 411, Trial Transcripts, Volume X, p. 1849.

18   Kinder said that the Petitioner had made an airline reservation for Kinder for the flight to Guam.

19   Docket No. 411, Trial Transcripts, Volume X, p. 1852. Kinder also testified that in 1995, the

20   Petitioner had asked him to deliver a pound of methamphetamine to Tennessee in exchange for

21   $1,200. Docket No. 411, Trial Transcripts, Volume X, p. 1828-29. Kinder testified that he

22   body-carried the pound and gave it to Terry Henson, then took a flight back to Long Beach.

23   Docket No. 411, Trial Transcripts, Volume X, p. 1828.       Government witness James Melton

24   ("Melton"), testified that the Petitioner told him that he was sending parcels of

25   methamphetamine to Guam. *See* Docket No. 411, Trial Transcript, Volume X, p. 1764-68.

26   Specifically, Melton testified that the Petitioner "used to say he was sending it for his brother

27   Roy." *See* Docket No. 411, Trial Transcript, Volume X, p. 1766.

28       Witness Lisa Miller ("Miller"), the Petitioner's girlfriend, also testified that in 1995,

1   Richard gave her one pound of methamphetamine to mail to Guam.  Trial Transcript, Volume

2   VI, p. 1117-18.  She testified that she could smell the methamphetamine, which was wrapped up

3   in tape like a ball, and that peanut butter and carbon paper was used so the drugs would not be

4   detected by Customs officers.  *See* Trial Transcript, VI, p. 1153-54.  Miller described the

5   Petitioner's actions when he obtained the pound of drugs:  "He brought it back to the house and

6   he packaged it up in the bedroom.  He had me get brown paper, carbon paper and peanut butter.

7   He packaged it up in a shoebox and labeled it.  Then he handed it to me and I mailed it at the

8   Post Office."  Trial Transcript, VI, p. 1153 p. 1117.

9          The testimony of these witnesses directly contradicts the Petitioner's argument that there

10   was no evidence to support the distribution count.   Therefore, his trial counsel was not deficient

11   in failing to argue that there was a lack of evidence, because such an argument would be

12   meritless.  As noted, it is not ineffective assistance of counsel if an attorney fails to raise a

13   meritless argument.  *See Bauman*, 692 F.2d at 572.  Accordingly, the court concludes there was

14   not ineffective assistance of counsel in this regard.

15          **3.  Whether trial counsel's failure to request a change of venue amounts to**

16   **ineffective assistance of counsel**[7]

17          The Petitioner contends that it was error for trial counsel to fail to request a change of

18   venue based on the media coverage of the case, because it was impossible to seat an impartial

19   jury and the jury was biased against him.  The Government argues that the Petitioner has not met

20   his burden of proving that a change of venue was justified, and requests that this ground for

21   relief be denied.

22          Due process requires a change of venue be granted when a trial court cannot seat an

23   impartial jury because of "prejudicial pretrial publicity or an inflamed community atmosphere."

24   *Turner v. Calderon*, 281 F.3d 851, 865 (9th Cir. 2002).  The Ninth Circuit "require[s] a

25   petitioner to show that prejudice should be presumed or that actual prejudice existed."  *Id.*

26

27   _____

28          [7] This argument is discussed in the Petitioner's  motion, and in his memorandum as Ground
     III.

Further, the court has held that: "Prejudice is presumed only in extreme instances 'when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime.'" *Daniels v. Woodford*, 428 F.3d 1181, 1211 (9th Cir. 2005) (quoting *Ainswoth v. Calderon*, 138 F.3d 787, 795 (9th Cir. 1998) *as amended* 152 F.3d 1223). The court articulated the following test:

> Three factors should be considered in determining presumed prejudice: (1) whether there was a "barrage of inflammatory publicity immediately prior to trial, amounting to a huge ... wave ... of public passion;" (2) whether the news accounts were primarily factual because such accounts tend to be less inflammatory than editorials or cartoons; and (3) whether the media accounts contained inflammatory or prejudicial material not admissible at trial.

*Daniels*, 428 F.3d at 1211. The Petitioner does not show any specific facts for this court to conclude that prejudice should be presumed, yet he urges this court to apply the presumption. Applying these factors here reveals that the Petitioner cannot satisfy the test for presuming prejudice. First, nothing in the record supports a finding that there was a "barrage of inflammatory publicity" that amounted to a "huge . . . wave of public passion." *Id.* The Petitioner includes what appears to be a partial transcription of one news media report. In the Petitioner's transcription, the news reporter refers to "the drug case against Roy Toves Cabaccang" and states that Roy Cabaccang "is accused of being the mastermind." The report never names the Petitioner. Thus, the Petitioner offers only conclusory statements alleging a "firestorm" of media coverage, but makes no showing that there was a "wave of public passion." Second, this news report cited by the Petitioner is "primarily factual" as it discusses the trial schedule and security concerns raised. Third, the Petitioner has not shown media accounts containing inflammatory or prejudicial material not admissible at trial. Clearly, this is not an instance where prejudice could be presumed.

Furthermore, the Petitioner has not shown the existence of actual prejudice that influenced the jury. "To demonstrate actual prejudice, [a petitioner] must show that 'the jurors demonstrated actual partiality or hostility that could not be laid aside.'" *Daniels*, 428 F.3d at 1211 (quoting *Harris v. Pulley*, 885 F.2d 1354, 1363 (9th Cir. 1988)). The Petitioner seemingly argues that the media coverage influenced the jurors to convict him; he offers nothing as to

1   whether the jurors showed actual partiality or hostility.  Notably, the Petitioner ignores the

2   substantial evidence against him, including the testimony of 22 informants who testified to the

3   drug trafficking ring that led to his conviction.

4       The court is not persuaded by the Petitioner's argument.  As discussed above, the court

5   finds that the Petitioner has failed to demonstrate that prejudice should be presumed or that

6   actual prejudice existed to support a request for a change in venue.  Therefore, trial counsel

7   provided adequate assistance when he did not make a motion for a change of venue, because

8   there were no grounds to support such a request.  In sum, such failure to satisfy both the

9   incompetence prong and prejudice prong of *Strickland* defeats the ineffectiveness claim.

10      **4.  Whether trial and appellate counsels' failure to argue that the original**

11  **sentence was unconstitutional proved to be ineffective assistance of counsel**[8]

12      The Petitioner contends that trial counsel and appellate counsels were ineffective in

13  failing to argue the original sentence was unconstitutional when the trial judge failed to impose

14  the mandatory term of supervised release.  The Government concedes that the court did not

15  impose a term of supervised release, but argues that this is not grounds for invalidating the

16  judgment as Petitioner cannot show prejudice.

17      The record reveals that at the April 17, 1998 sentencing, the court imposed a term of life

18  imprisonment on Counts II, III and V, and 240 months on Count IV, but did not impose

19  supervised release.  Following the remand of the case pursuant to *Cabacang I,* the judge stated

20  that he did not have jurisdiction to resentence the Petitioner, and he ordered the amendment of

21  the Petitioner's judgment to reflect convictions only on Count II and Count IV.  He ordered that

22  the Petitioner "continue to serve" the previously imposed life sentence on Count II.  He did not

23  impose a term of supervised release.[9]

24

_____

25  [8]  This argument is discussed in the Petitioner's motion, and in his memorandum as Ground

26  IV.

27  [9]  As a practical matter, it may appear unnecessary to sentence a defendant to a term of
    supervised release following the imposition of a life sentence, but such has been done in other cases

28  in this circuit.  *See e.g., United States v. Mitchell,* 568 F.3d 1147 (9th Cir. 2009) (district court had

Case 1:97-cr-00095   Document 534   Filed 08/23/10   Page 12 of 23

1    With regard to this specific argument, the court examines only whether there was

2    prejudice caused by the alleged error.  As noted, the court in *Strickland* stated: "If it is easier to

3    dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we

4    expect will often be so, that course should be followed." *Id.* at 697.  The court finds that even

5    though his trial and appellate counsels did not object to the court's failure to impose a term of

6    supervised release, the Petitioner was not prejudiced.

7        Prior to the Sentencing Reform Act of 1984, a federal prisoner was eligible for release on

8    parole after serving ten years of a life sentence.  *See* 18 U.S.C. § 4205.  The Sentencing Reform

9    Act, however, abolished parole in the federal system.  *See* Pub. L. No. 98-473, tit. II, § 218(a)(5),

10   98 Stat. 1837, 2027 (1984) codified as amended at 18 U.S.C. § 3583.  The parole system was

11   replaced with a supervised release system "in which the length of [post-incarceration]

12   supervision is dependent solely on the defendant's need for supervision after release from jail."

13   *United States v. Montenegro-Rojo*, 908 F.2d 425, 432 (9th Cir. 1990).

14       Because parole no longer exists in the federal system, the Petitioner must serve the entire

15   life term of imprisonment imposed on Count II.  He will never be released, and thus will never

16   have the opportunity to serve supervised release even if imposed by the court.  Even though his

17   attorneys did not raise this argument, the Petitioner cannot show that "the result of the

18   proceeding would have been different." *Strickland*, 466 U.S. at 694.  Therefore, the court finds

19   that he has not demonstrated prejudice.  Accordingly, the court finds that there was no

20   ineffective assistance of counsel in this regard.

21       **5.  Whether resentencing counsel's failure to argue that the**

22   ***Booker* decision should have applied to his case constituted ineffective assistance of**

23   **counsel**[10]

24       The court next examines the Petitioner's allegations that his resentencing counsel was

25

26   ───────────────

     imposed a sentence of mandatory life term of  imprisonment  and ten years of supervised release).

27       [10]    This ground is addressed only in the Petitioner's motion. He did not discuss this issue

28   in his subsequent memorandum.

1   ineffective in failing to argue that his sentence was not final at the time of the resentencing, and

2   that the holding in *United States v. Booker*, 543 U.S. 220 (2005) should be applied at

3   resentencing. The Government asks the court to reject this argument, because the Petitioner has

4   not established how he was prejudiced by *Booker*.

5      Review of the record reveals that the Petitioner erroneously believes his counsel at

6   resentencing did not argue for the application of *Booker*. In fact, his counsel had apparently filed

7   written papers, and had orally argued during the May 6, 2005 resentencing, that *Booker* should

8   apply. The judge presiding at the resentencing addressed, and rejected, this argument.

> [THE COURT]:      In their papers, counsel for James and Richard Cabaccang
> have proffered arguments that these defendants should be resentenced under the
> Supreme Court's recent decision in <u>United States versus Booker</u> found at 543
> U.S. and 125 Supreme Court Reporter, 738, January 12, 2005.
>
> Specifically, defendants argue under <u>Apprendi</u> that there was no jury
> determination of the amount of drugs involved in the offense. This argument was
> rejected by the three-judge Ninth Circuit panel in <u>United States versus</u>
> <u>Cabaccang</u>, 36 Fed Appendix 234, Ninth Circuit, 2002. That rejection was
> specifically upheld by the *en banc* panel.
>
> <u>Booker</u> applies to cases on direct appeal as of the date of that opinion.
> Because in 2003 the Ninth Circuit had explicitly upheld the convictions of James
> and Richard Cabaccang on Count II, at Cabaccang 341 F.3d at 905, the time for
> direct appeal to the Supreme Court is passed. Accordingly, unlike Roy, the cases
> of James and Richard Cabaccang are no longer on direct appeal and <u>Booker</u> does
> not apply to them. . . .

18   Transcript of Resentencing, May 6, 2005, pp. 6-7. The court then heard argument from defense

19   counsel that *Booker* applied, as well as from the Government prosecutor stating that the Ninth

20   Circuit had not remanded the Petitioner's or his brother James's cases for resentencing.

21   Ultimately, the court concluded that it did not have jurisdiction to resentence, and stated:

> "Accordingly, this court orders that the judgment be amended to reflect only
> convictions on Counts Two and Four. The reversal of the convictions for Counts
> Three and Five has no effect on the sentence imposed for the remaining counts to
> which defendant was found guilty. Defendant Richard Toves Cabaccang is
> hereby committed to the custody of the Bureau of Prisons to continue to serve the
> sentence imposed by Judge Unpingco of life on Count Two, and 240 months
> concurrent on Count Four."

26   Transcript of Resentencing, May 6, 2005, pp. 15-16.

27      The Petitioner and James appealed this decision, and the Ninth Circuit affirmed, holding:

28   "The district court accordingly did not err in concluding that it lacked jurisdiction to resentence

1  James and Richard." *United States v. Cabaccang*, 226 Fed. App. 750, 2007 WL1031376 (9th

2  Cir. March 30, 2007).

3       The Petitioner is factually incorrect in arguing that his counsel at resentencing did not

4  argue that *Booker* applied; the record shows that counsel did so.  There is no ineffective

5  assistance of counsel in this respect.

6       **6.  Whether trial counsel's failure to argue that he had been erroneously sentenced**

7  **on the money laundering count was ineffective assistance of counsel[11]**

8       The Petitioner next argues that his trial counsel's performance was deficient in failing to

9  challenge the sentence of 240 months on Count IV, because the Sentencing Guidelines call for a

10 lesser sentence.  The Government concedes that standing alone, the 240-month sentence is

11 outside the Guidelines range for a conviction on money laundering. *See* Docket No. 523.

12 However, the Government argues that the term of imprisonment for money laundering did not

13 affect the Petitioner's ultimate sentence.

14      As stated, "a court need not determine whether counsel's performance was deficient

15 before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. .

16 . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

17 prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466

18 U.S. at 697.  A review of the record reveals that the Petitioner cannot demonstrate that he was

19 prejudiced; that is, he cannot show "that there is a reasonable probability that, but for counsel's

20 unprofessional errors, the result of the proceeding would have been different." *Strickland*, 488

21 U.S. at 694.

22      First, Count IV did not affect the offense level that was used in imposing his sentence.

23 The Sentencing Guidelines provide for "grouping" to determine the combined offense level:

24 "The combined offense level is determined by taking the offense level applicable to the Group

25 with the highest offense level and increasing the offense level" in accordance with a table.  *See*

26

27      ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28          [11]   This ground is addressed only in the Petitioner's motion. He did not discuss this issue
    in his subsequent memorandum.

Page 15 of  23

1   USSG § 3D1.4 (1998). This combined offense level is used to determine the appropriate

2   sentence. *See* USSG § 3D1.4 (1998).

3           According to the Government, Count IV had been assigned "0" units, and thus did not

4   affect the calculation of the combined offense level and the ultimate sentence imposed. At the

5   April 17, 1998 sentencing hearing, the court set forth the determination of offense level as

6   follows:

7               Accordingly, the Court will announce its conclusions as to the appropriate
            offense level and criminal history category.

8

9               The offenses are Count II, Conspiracy to Distribute Methamphetamine;
            Count III, Conspiracy to Import Methamphetamine; Count IV, Conspiracy to
            Launder Monetary Instruments; and Count V, Importation of Methamphetamine.

10

11              Counts II, III and V are grouped for quantity. Base offense level is 38,
            total offense level is 38.

12              Count IV, the offense level for laundering is 20. It was drugs proceeds,
            plus three; over 100,000, plus one. Total offense level, 24.

13

14              The combined offense level is 38, criminal history category is IV. With
            the granting of the motion for a two-level enhancement, the offense level goes to
            40. The mandatory minimum sentence is, for Count II, III, and V, 10 years; and

15          for Count IV there's no mandatory minimum.

16   Docket No. 410a, Transcript of Sentencing, pp. 13-14. Although the resentencing court assigned

17   an offense level of 24 for Count IV, this count did not add to the combined offense level used to

18   impose the sentence.

19           Second, the Petitioner cannot show prejudice because the sentence on Count IV is

20   concurrent to the drug-related counts. At the sentencing, the court sentenced the Petitioner to

21   life imprisonment "for each of Counts II, III, and V, to be served concurrently. For Count IV, he

22   is sentenced to a term of 240 months, to be served concurrently with Counts II, III, and V."

23   Docket No. 410a, Transcript of Sentencing, p. 17. Because the 240 months are to be served

24   concurrently, there is no prejudice to the Petitioner.

25           For these reasons, the court finds that the Petitioner was not prejudiced when his counsel

26   did not raise this argument at resentencing. Therefore, the court finds there is no ineffective

27   assistance of counsel.

28   ///

**7.  Whether the District Court erred in not inquiring whether jurors were actually exposed to newspaper articles that were highly prejudicial to the Petitioner's right to an impartial trial**[12]

The Petitioner next contends that the District Court erred in not inquiring whether the jurors were actually exposed to highly prejudicial newspaper articles.  The Petitioner does not state when these newspaper articles were published, nor does he state the information that these news reports contained.  In its response, the Government presumed that the Petitioner is referring to news coverage prior to and during jury selection, and argues that this ground is not supported by the evidence because the presiding judge questioned the potential jurors whether they had seen, heard or read any news reports about the case.  Jurors who responded affirmatively were then examined separately in chambers.  The court construes this claim as arguing that prejudice should be presumed or that actual prejudice existed from these newspaper reports that prevented the Petitioner from obtaining a fair jury.

The argument as to presumed and actual prejudice has already been discussed extensively.  *See supra*, pages 10-12.  The court has already concluded that the Petitioner has not shown any specific facts warranting a presumption of prejudice.  As to the Petitioner's argument regarding the newspaper articles, a review of the record reveals that some potential jurors stated that they had read media reports of the case.  Upon questioning by the court and attorneys, some jurors said that they could be impartial.  Other jurors admitted that they could not, and were excused.  The record here does not support a presumption of prejudice.  Furthermore, the Petitioner has not shown the existence of actual prejudice, that is, "actual partiality or hostility that could not be laid aside." *Daniels*, 428 F.3d at 1211 (citation and quotation marks omitted).  Potential jurors who indicated that they were unable to be impartial were excused.  In fact, one juror who had admitted to reading news articles but indicated that he could be impartial, was excused.  *See* Docket No. 410, Transcript of Jury Selection, Volume I, pp. 136-37.

---

[12]  This ground is addressed only in the Petitioner's motion.  He did not discuss this issue in his subsequent memorandum.

This claim seems to be based on the Petitioner's mere speculation that the jurors may have been exposed to the news articles. "Such speculation is plainly insufficient to establish prejudice." *Gonzalez v. Knowles*, 515 F.3d 1006, 1016 (9th Cir. 2008). The Petitioner has not shown that there was prejudice based on these newspaper articles, and the record contradicts this claim. He has not demonstrated that his counsel's performance was deficient, or that he was prejudiced. Accordingly, the court finds that the Petitioner has not met his burden of proving ineffective assistance of counsel.

**8. Whether trial counsel's failure to explore the possibility of a plea agreement established ineffective assistance of counsel[13]**

The Petitioner challenges his trial counsel's failure to initiate plea negotiations with the Government prosecutor. The Government asserts that the Petitioner had been offered a plea agreement, but he did not accept it. The Government has included this unsigned plea agreement, signed received by the Petitioner's trial counsel, as an attachment to its response. *See* Docket No. 524, Exh 10. Thus, this claim of error is without merit.

**9. Whether trial counsel's acceptance of the Government's allegation of facts and failure to investigate alternative defenses amounts to ineffective assistance of counsel[14]**

The Petitioner argues that in general, his trial counsel failed to investigate the case and prepare for the trial, and was willing to accept the version of the facts presented by the Government. More specifically, he asserts that trial counsel did not investigate alternative lines of defense. The Government requests the court reject this argument, because the Petitioner has not stated the alternative defenses that should have been investigated.

In analyzing trial counsel's performance, this court recognizes that "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The

---

[13]    This ground is addressed only in the Petitioner's motion. He did not discuss this issue in his subsequent memorandum.

[14]  This issue is discussed in the Petitioner's motion, and in his memorandum as Ground IX.

Page 18 of 23

1  Petitioner disagrees with the defense theory advanced by trial counsel, and argues that another

2  theory should have been pursued. However, this is clearly a strategic decision made by trial

3  counsel, and the court acknowledges the "strong presumption that counsel's conduct . . . might

4  be considered sound trial strategy." *Strickland,* 466 U.S. at 689. As guided by *Strickland,* the

5  court defers to trial counsel's strategic decisions.

6       Upon review of the record, the court finds that the Petitioner has not overcome the strong

7  presumption that his counsel provided adequate representation. *See id.* Accordingly, the court

8  finds there was no ineffective assistance of counsel.

9       **10. Whether trial counsel's failure to request a mistrial after certain media**

10  **reports constitutes ineffective assistance of counsel**[15]

11       The Petitioner next argues that trial counsel was ineffective when he did not request a

12  mistrial after a television news report covering his trial showed drugs relating to another case

13  and made references to two unsolved murders. The Petitioner also refers to a newspaper article

14  on drug distribution activity on island that mentioned the Petitioner as being responsible for

15  murders and identified him as being an alleged leader and organizer of the drug conspiracy. He

16  contends these news reports may have influenced the jury and prejudiced his case. The

17  Government concedes that the television news report relating to one witness's testimony was

18  discussed by the court and counsel outside of the jury, but this news report concerned only Roy

19  Cabaccang, and the trial judge determined that this news coverage had no direct correlation to

20  the trial. *See* Trial Transcript XVI, pp. 2844-2852.

21       The court recognizes the strong presumption that must be afforded to trial counsel's

22  conduct, and that "[j]udicial scrutiny of counsel's performance must be highly deferential."

23  *Strickland,* 466 U.S. 689. Here, the Petitioner contends that his trial counsel's performance was

24  deficient because he did not request that the court inquire into whether the jurors were aware of

25  these news stories, and thus whether the publicity had prejudiced the case. "The prejudicial

26

27         [15] This ground is discussed in the Petitioner's motion, and in his memorandum as Ground

28  X.

Case 1:97-cr-00095   Document 534   Filed 08/23/10   Page 19 of 23

1  effect of pervasive publicity is tested under the presumed prejudice or the actual prejudice

2  standards." *Harris*, 885 F.2d at 1361.

3      As was discussed above, *supra* at pages 10-12, there no grounds to warrant a

4  presumption of prejudice. On the basis of the news reports cited by the Petitioner, the record in

5  this case does not reveal a community that was "saturated" with prejudicial and inflammatory

6  publicity. *Id.* Furthermore, the court finds that the Petitioner has not shown actual prejudice.

7  He contends that his trial counsel should have made a motion for mistrial to determine *whether*

8  the publicity affected the jurors. However, the Ninth Circuit requires that the Petitioner "must

9  show" that the jurors were actually partial. *See Harris*, 885 F.2d at 1363. Here, the Petitioner

10  concedes that it was never established that there was actual prejudice.

11      The Petitioner has not overcome the "strong presumption that counsel's conduct falls

12  within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

13  Furthermore, he does not show that the outcome of his trial would have been different, and thus

14  he cannot satisfy the "prejudice prong" under *Strickland*. *See id.* at 697. The court finds that the

15  Petitioner has not demonstrated deficient performance and prejudice and thus has not proved that

16  he received ineffective assistance of counsel.

17      **11.  Whether trial counsel's failure to request jury sequestration amounts to**

18  **ineffective assistance of counsel[16]**

19      The Petitioner next asserts that trial counsel was ineffective because counsel should have

20  filed a motion to sequester the jury, arguing that there was a "massive amount of pretrial

21  publicity." He contends that his attorney should have anticipated that in Guam's small

22  community, there would have been considerable negative publicity. Although not articulated by

23  the Petitioner, he appears to argue that the news media reports give rise to a presumption of

24  prejudice or demonstrate actual prejudice. He suggests that if the jury had been sequestered,

25  then he would not have been convicted. This ground was not included in the Petitioner's motion,

26

27  ─────────────────────

28  [16] This ground is addressed only in the Petitioner's memo. He did not raise this issue in his
     initial motion. *See supra*, note 4.

1    only his memo.  This ground was not addressed by the Government.

2         To evaluate the Petitioner's argument for sequestration, the court first addresses the

3    Petitioner's contention that he had been prejudiced by the news reports.  As discussed previously,

4    the Petitioner must "show that prejudice should be presumed or that actual prejudice existed."

5    *Turner*, 281 F.3d at 865.  This court previously concluded that the Petitioner not only failed to

6    satisfy the three-factor test in *Daniels v. Woodford*, 428 F.3d 1181, for application of the

7    presumption of prejudice, but he also failed to demonstrate actual prejudice as a result of the

8    news coverage.

9         The court next recognizes that, first and foremost, a criminal defendant does not have the

10   right to a sequestered jury.  *See Powell*, 679 F.2d at166 n.3.  The decision to sequester a jury is

11   within the trial court's discretion.  *See United States v. Dufur*, 648 F.2d 512, 513 (9th Cir. 1980)

12   (citing *Frame v. United States*, 444 F.2d 71, 72 (9th Cir.), cert. denied, 404 U.S. 942 (1971)).

13   Even assuming *arguendo* that counsel had in fact sought, but was denied sequestration, the

14   Petitioner has not demonstrated that the decision not to sequester the jury resulted in

15   fundamental unfairness, in accordance with *Powell v. Spalding*, 679 F.2d 163 (9th Cir. 1982), or

16   in actual prejudice to his right to a fair trial.  *See United States v. Floyd*, 81 F.3d 1517, 1528

17   (10th Cir.1996).  His arguments seems to be that if the jurors had been sequestered, they would

18   not have been prejudiced against him and would not have convicted him.  The Petitioner does

19   not acknowledge the mountain of evidence presented during the trial that resulted in his

20   conviction.  In addition, he does not discuss the court's frequent admonitions to the jury not to

21   read or watch news reports about the trial.  He cannot overcome the strong presumption that he

22   received effective assistance from trial counsel, and he does not demonstrate that the outcome

23   would have been different.  The Petitioner fails to prove both deficient performance and

24   prejudice required under the two-prong test set forth in *Strickland*.  Accordingly, the court finds

25   there was not ineffective assistance of counsel.

26        **B.  Procedural default**

27        In addition to challenging the claims of ineffective assistance of counsel made by the

28   Petitioner, the Government also contends that the Petitioner procedurally defaulted the following

Case 1:97-cr-00095   Document 534   Filed 08/23/10   Page 21 of 23

1  two claims by failing to raise them on direct appeal:  1) District Court's failure to inquire

2  whether the jurors were actually exposed to highly prejudicial newspaper articles; and 2) trial

3  counsel's failure to make a motion for mistrial on the basis of certain news media reports.  *See*

4  Docket Nos. 523 and 524.

5        "Where a defendant has procedurally defaulted a claim by failing to raise it on direct

6  review, the claim may be raised in habeas only if the defendant can first demonstrate 'cause' and

7  'actual prejudice,' or that he is ''actually innocent.'"  *Bousley v. United States*, 523 U.S. 614, 622

8  (1998) (citations omitted).  *See also United States v. Skurdal*, 341 F.3d 921, 925 (9th Cir. 2003)

9  ("If a criminal defendant could have raised a claim of error on direct appeal but nonetheless

10  failed to do so, he must demonstrate both cause excusing his procedural default, and actual

11  prejudice resulting from the claim of error.") (quoting *United States v. Johnson*, 988 F.2d 941,

12  945 (9th Cir. 1993)).  Therefore, the court examines whether the Petitioner has demonstrated

13  cause and actual prejudice, or whether he is actually innocent.

14        Upon review of the record, the Petitioner has not demonstrated cause excusing the default

15  or actual prejudice.  "Generally, to demonstrate 'cause' for procedural default, an appellant must

16  show that 'some objective factor external to the defense' impeded his adherence to the

17  procedural rule."  *Skurdal*, 341 F.2d at 925.  The Petitioner does not explain the cause, that is,

18  the "objective factor," that prevented him from raising this argument on direct appeal.  The

19  argument was not raised in his direct appeal.  The court is cognizant that "the mere fact that

20  counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim

21  despite recognizing it, does not constitute cause for a procedural default."  *Murray v. Carrier*,

22  477 U.S. 478, 486 (1986).

23        Furthermore, this court has already concluded that the Petitioner has not demonstrated

24  prejudice as a result of the newspaper articles or the television news report.  Again, the Petitioner

25  offers only speculation that the jury may have been exposed to the newspaper articles.  Also, he

26  concedes that it was never established that there was actual prejudice as a result of the television

27  news report.

28        In addition, the Petitioner does not discuss the alternative method of excusing procedural

Case 1:97-cr-00095   Document 534   Filed 08/23/10   Page 22 of 23

default, which is demonstrating that he is "actually innocent" of the offense. *See Bousley*, 523 U.S. at 622. The Petitioner bears the burden of showing that "in light of all the evidence, . . . the trier of the facts would have entertained a reasonable doubt of his guilt." *Id.* at 624. The Petitioner has not shown that the trier of fact would have entertained reasonable doubt. Here, the jury heard from 44 Government witnesses, saw exhibits and written stipulations as well as other documentary evidence, and ultimately returned a unanimous verdict finding the Petitioner guilty on all counts. The Petitioner does not argue, and the court does not find, that he is "actually innocent." *See id.* at 622.

Accordingly, because the Petitioner has not demonstrated cause excusing the default or actual prejudice, the court finds that these claims have been procedurally defaulted.

### III. CONCLUSION

For the foregoing reasons, the court finds that the Petitioner has failed to overcome the "strong presumption" that the conduct of his trial, resentencing and appellate counsel "falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, and has failed to demonstrate that the outcome of his trial would have been different. *See id.* at 697. Consequently, as to each of the grounds argued by the Petitioner, the court concludes that he has not demonstrated deficient performance and prejudice and thus has not proved that he received ineffective assistance of counsel. The court additionally finds that the Petitioner has procedurally defaulted one of these claims.

Accordingly, the Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is **HEREBY DENIED.** Furthermore, the court does not find that the Petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Therefore, the court will **NOT** issue a certificate of appealability. *See* Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

**SO ORDERED**.



/s/ **Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Aug 23, 2010**